CLEVELAND REALTY COMPANY, MARGARET LOVE BURGESS, RALPH W. GARDNER, MONTROSE MULL MEACHAM, MONTROSE PALLEN MEA-CHEM, BY HER NEXT FRIEND, EARL H. MEACHEM, OTIS MULL MEA-CHEM, BY HIS NEXT FRIEND, EARL H. MEACHEM, MRS. O. MAX GARD-NER, N. E. BURGESS, MRS. O M. MULL, MRS. D. FORREST MOORE, DR. D. F. MOORE, MRS. J. D. LINEBERGER, MRS. E. J. McKEITHAN, SUZANNE GARDNER HAYES, JIM GARDNER, MRS. DRAPER WOOD, M. A. SPANGLER, SR., SUE SPANGLER, SUE ROSTAN, ATHOS ROSTAN, MRS. R. W. STONE, R. W. STONE, SHERRILL W. LINEBERGER, EARL H. MEACHAM, DR. H. C. THOMPSON, DR. D. T. BRIDGES, MRS. R. F. BRACKETT, DR. J. D. JOHNSON, ALMA McBRAYER WEBB, MRS. JAP SUTTLE, MRS. PENRY OWEN, PENRY OWEN, PEARL WEATHERS SMITH, MRS. I. D. STONE, MRS. RUSH STROUPE, MRS. J. L. YELTON AND R. T. LeGRAND, JR. v. HELEN S. HOBBS, L. LYNDON HOBBS, AND CLEVELAND COUNTRY CLUB AND ITS BOARD OF DIRECTORS, RAY WEBB LUTZ, DR. WARREN J. COLLINS, MRS. CHARLES PADGETT, JEAN W. SCHENCK, A. W. ARCHER, B. P. SHERER, BEN HENDRICKS, CHARLES R. DUVAL, EARL W. SPANGLER, DR. EDWIN PLASTER, EARL A. HAMRICK AND MRS. JACK VINCENT.

(Filed 18 March 1964.)

**1. Deeds §§ 12, 19—**

Restrictive covenants inserted in a warranty deed between the description and the *habendum* are not invalid as repugnant to the unqualified fee convey-ed by the instrument, since such restrictions do not delimit the fee and are not repugnant to the conveyance of the fee simple.

**2. Deeds § 19—**

The servitude imposed by restrictive covenants in a deed is a species of in-corporeal right which runs with the land and is binding upon mesne pur-chasers from the grantor, even though the restrictions are not inserted in sub-sequent deeds.

**3. Same—**

The grantee of lands in a deed restricting its use to a golf course may not convey an easement for a street across the golf course to the owners of land in an adjacent subdivision, since such use is inconsistent with the use con-templated by the restrictive covenants.

**4. Dedication § 1—**

The sale of lots in a subdivision by deed referring to a recorded plat show-ing lots, streets, and a golf course, and containing restrictions that the de-velopers were dedicating the golf links and the playground for the use and

pleasure of the owners of the lots, *is held* a valid dedication of the golf course to the purchasers of lots in the subdivision, irrespective of acceptance by the public, but the dedication is to owners of lots and lands within the development and does not constitute a dedication to the owners of lots in the neighborhood or in an adjacent subdivision.

**5. Appeal and Error § 1—**

The owner of a subdivision dedicated a part thereof for use as a golf course and thereafter conveyed the golf course to a country club with restrictive covenants to the same effect. The country club thereafter conveyed an easement across the golf course for a street. *Held:* The conveyance of the easement for the street is void, either because repugnant to the purpose of the dedication or because in violation of the restrictive covenant, and the question whether the developer, after effecting the dedication, had any right to impose further restrictions by deed, need not be determined on this appeal.

APPEAL by plaintiffs from *Froneberger, J.,* September-October 1963 Civil Session of CLEVELAND.

Action to permanently enjoin the construction of a roadway over and across a golf course and recreational area.

Prior to 25 May 1926 Cleveland Realty Company acquired in fee, without any restrictions as to use, a tract of land situate about two miles east of Shelby, known as the Cleveland Springs Estate. The Realty Company developed a part of the property for residential and recreational purposes and located thereon a nine-hole golf course. On 25 May 1926 it caused to be recorded a plat of the development showing lots, streets and the golf course. There is included on the plat certain provisions and restrictions, the pertinent portions of which are as follows:

Developers "do hereby dedicate the streets and alleys as indicated on the plat to the public use forever . . .

"We further dedicate the golf links and playgrounds, and the land occupied by the same indicated on the map, for such use and pleasure of the owners of the lots . . .

"We restrict the use of all lots shown on this plat . . . in the following manner, to wit:

"1.   The lots shown on this plat are to be used as the location of residences, with only one residence to the lot . . ."

. . . . .

"3.   All title, rights and property not specifically conveyed are hereby reserved to (developers) . . .

"4.   Further restrictions may be prescribed in several conveyances by (developers) which together with the foregoing shall perpetually attach to and run with the land."

Thereafter, Realty Company sold lots for residential purposes. On 25 June 1955 it conveyed to Cleveland Country Club, Inc., the nine-hole golf course in fee simple by deed of bargain and sale with the usual warranties. Following the description in the deed and preceding the *habendum* clause, there is inserted the following (irrelevancies omitted) ;

". . . (A)s conditions precedent and running with the land herein conveyed and perpetually attached thereto, this conveyance is hereby restricted as follows:

"1. That the land herein conveyed is to be used as the site of a nine-hole golf course and tennis courts as now used and located.

. . . . .

"3. That said land shall be used for no other purpose than as the site of a golf course and tennis courts and other recreational purposes, but . . . any portion not occupied by same may be used for parks and playgrounds for the use and enjoyment of the members of said golf course and tennis courts, including their families and guests.

"4. That in the event of the violation of any of the restrictions or reservations herein set forth, the grantor, its successors and assigns, shall have the right to have the same abated.

"5. That all of said conditions, easements and reservations shall perpetually attach to and run with the land conveyed."

The granting and *habendum* clauses of this deed are regular in form and do not contain the restrictions, but the deed recites consideration as follows: ". . . in consideration of One Hundred ($100.00) Dollars and the stipulations hereinafter contained and other valuable consideration . . ."

The defendants Hobbs own approximately forty acres of land, not a part of Cleveland Springs Estate, to the north of and adjoining the golf course. This tract has access to Highway 150 without crossing the golf course or any part of Cleveland Springs Estate. Hobbs planned a development of a portion of their tract into residential area of seven lots or less, to have ingress and egress by a road not more than 22 feet wide over and across the golf course between number 7 green and number 8 tee, this road to connect with Fairway Drive in the Cleveland Springs Estate Development just south of the golf course. On 17 June 1963 Cleveland Country Club, Inc., by authority of its board of directors granted to defendants Hobbs an easement of right of way for said road across the golf course. About 13 July 1963 Hobbs began construction of the road.

Plaintiffs, Cleveland Realty Company, certain owners of lots in Cleveland Springs Estate Development, and certain stockholders and members of Cleveland Country Club, Inc., instituted this action against defendants, Mr. and Mrs. Hobbs, Cleveland Country Club, Inc., and the directors of the Country Club, to permanently enjoin the construction and maintenance of the road. A temporary restraining order was issued 23 July 1963.

Defendants demurred to plaintiffs' complaint on the grounds that there was a misjoinder of parties and causes, certain parties plaintiff and defendant have no justiciable interest in the controversy, and the purported restrictions in the deed to the Country Club are void as a matter of law.

Defendants waived hearing on the demurrer. Plaintiffs and defendants stipulated the facts, set out in substance above, and agreed that the judge might hear the matter and enter judgment without the intervention of a jury. It was further stipulated that the questions "to be determined by the court are as follows:

"1. Was the dedication of the nine-hole golf course effected by virtue of the dedicatory words appearing on the original plat of Cleveland Springs Estates property . . . ?

"2. If the Court determines that a valid dedication was effected by virtue of the original plat . . . could Cleveland Realty Company later impose valid restrictions as to the dedicated property?

"3. Were the restrictions which appeared in the deed from Cleveland Realty Company to the Cleveland Country Club, Inc., which were included in the said deed following the description of the golf course property, valid?

"4. Is the conveyance and agreement entered into on June 17, 1963, between L. Lyndon Hobbs and wife, Helen S. Hobbs, and the Cleveland Country Club, Inc., . . . valid?

"5. Are the plaintiffs entitled to a permanent injunction restraining the defendants from using their right of way across the said nine-hole golf course as ingress and egress for the said residential property?"

The judge made findings of fact according to the stipulations of fact, and conclusions of law (pertinent excerpts therefrom will be set forth in the opinion proper), and entered judgment dissolving the temporary restraining order and decreeing that defendants Hobbs "have the right to the full use and enjoyment of said easement . . . free from the interference of the plaintiffs or any of them . . ."

*Horn, West & Horn for plaintiff appellants.*

*Horace Kennedy, John J. Mahoney, Jr., and L. Lyndon Hobbs for defendant appellees.*

MOORE, J.   The trial judge concluded as a matter of law "that since the . . . restrictions which are contained in the deed from Cleveland Realty Company to Cleveland Country Club, Inc., did not appear in either the granting clause or in the *habendum* clause, but were merely contained therein after the description of the property being conveyed, . . . such restrictions were of no effect and were invalid, and as such, amounted to mere surplusage." Appellants contend that this is error, and we agree.

The judge probably had in mind the following well established rule of law: "When the granting clause in a deed to real property conveys an unqualified fee and the *habendum* contains no limitation on the fee thus conveyed and a fee simple title is warranted in the covenants of title, any additional clause or provision repugnant thereto and not by reference made a part thereof, inserted in the instrument as a part of, or following the description of the property conveyed, or elsewhere other than in the granting or *habendum* clause, which tends to delimit the estate thus conveyed, will be deemed mere surplusage without force or effect." *Jeffries v. Parker,* 236 N.C. 756, 757-8, 73 S.E. 2d 783; *Kennedy v. Kennedy,* 236 N.C. 419, 72 S.E. 2d 869; *Oxendine v. Lewis,* 252 N.C. 669, 114 S.E. 2d 706. But this rule of law does not apply to the restrictions in the deed to the Country Club. These restrictions are not repugnant to and do not delimit the fee; they affect the use to which the property may be put, but do not tend to debase the fee simple quality of the estate or to make the estate subject to a lesser estate. Furthermore, the restrictions are by reference made a part of the consideration for the conveyance, in these words: ". . . in consideration of One Hundred ($100.00) Dollars and the stipulations hereinafter contained . . ."

The holding in *Barrier v. Randolph,* 260 N.C. 741, 133 S.E. 2d 655, is decisive of this question. In the deed in that case the granting, *habendum* and warranty clauses are sufficient to convey a fee simple, and after the description but before the *habendum* clause it is stated: "And this deed is made subject to the following conditions, reservations and restrictions which constitute covenants running with the land and binding upon the parties hereto, their heirs and assigns, to wit" (here the restrictions are set out in numbered paragraphs, and among other things restricting the property to residential use and specifying lot sizes and location, cost and composition of residences to be constructed thereon). *Bobbitt, J.,* speaking for a unanimous Court, rejected the contention that the restrictions are repugnant to the fee simple quality of the estate, and said:

" 'In the interpretation of a deed, the intention of the grantor or grantors must be gathered from the whole instrument and every part thereof given effect, unless it contains conflicting provisions which are irreconcilable or a provision which is contrary to public policy or runs counter to some rule of law.' *Lackey v. Board of Education,* 258 N.C. 460, 462, 128 S.E. 2d 806, and cases cited; *Rouse v. Strickland,* 260 N.C. 491, 495, 133 S.E. 2d 151.

"The sufficiency of the . . . deed as a conveyance in fee simple . . . is not controverted. There is no contention it conveyed a life estate or other estate less than a fee simple.

"In express terms, the . . . deed provides that it is made subject to the conditions, reservations and restrictions therein set forth and that such conditions, reservations and restrictions constitute covenants. . . . The intention of the grantors that such conveyance is made subject to such conditions, reservations and restrictions is manifest. Moreover, '(i)t is a settled principle of law that a grantee who accepts a deed poll containing covenants or conditions to be performed by him *as the consideration of the grant,* becomes bound for their performance, although he does not execute the deed as a party.' *Maynard v. Moore,* 76 N.C. 158, 165; *Herring v. Lumber Co.,* 163 N.C. 481, 485, 79 S.E. 765; *Williams v. Joines,* 228 N.C. 141 143, 44 S.E. 2d 738." (Emphasis added).

". . . (T)he conditions, reservations and restrictions set forth in the . . . deed are not void *ab initio* on the ground that they are repugnant to the granting, habendum and warranty clauses of said deed."

In the instant case, if the Realty Company had the legal right to make the conveyance to the Country Club and to impose the restrictions which are set out in the deed, it has the right to enforce the restrictions as against the Country Club and its assignees and successors in title. The servitude imposed by restrictive covenants in a deed is a species of incorporeal right which runs with the land and is binding upon mesne purchasers from the grantor, even though the restrictions are not inserted in subsequent deeds. *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344.

A collection of leading American cases dealing with the question of whether the maintenance, use, or grant of a right of way over restricted property is a violation of a restrictive covenant limiting the use of such property is found in 25 A.L.R. 2d at page 904. A survey of those cases has led the editor to conclude:

"Generally speaking, the cases disclose that the courts are inclined to hold that the maintenance, use, or grant of a right of way

across property restricted in its use is a violation of the restriction if such maintenance, use, or grant seems to be inconsistent with the parties' intention in creating or agreeing to the restriction and with the object sought to be thereby accomplished, while if it does not interfere with the carrying out of the parties' intention and the purpose of the restriction, it will not be held to be a violation."

To the same effect is the text in 14 Am. Jur., Covenants, Conditions and Restrictions, s. 255, p. 635.

Applying these principles, this Court held in *Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E. 2d 134, that a purchaser of a lot in a subdivision restricted to residential purposes could not construct a roadway across the lot for access to a business or commercial establishment, a commercial cemetery. The Court said: "Since it took the . . . tract with notice of restrictive stipulations, the defendant cannot equitably refuse to perform them. . . . As an original party to the restrictive covenants, the plaintiff (developer of the subdivision) is entitled to restrain the threatened breach." Further: "Such use would violate the restrictions in question for it would be tantamount to dedicating the . . . tract to a prohibited business or commercial purpose. Our conclusion harmonizes with the decisions of the courts of other jurisdictions which have been confronted by the same problem."

The roadway which the Hobbs propose to construct and maintain would be inconsistent with and violative of the restrictions which the Realty Company undertook to impose. The golf course was restricted to recreational uses. It was not the intention of the Realty Company that it should be even a limited thoroughfare for public travel and have a roadway or roadways thereon incidental to the development of residential subdivisions by independent developers of lands outside the Cleveland Springs Estate, and thereby become a consideration and inducement to prospective purchasers in independent subdivisions. It was undoubtedly contemplated that the golf course would be a relatively private and secluded area where those entitled thereto, children and adults, might enjoy recreational activities without the dangers, interruptions and molestation of vehicular traffic.

The court below concluded "that the Cleveland Realty Company . . . did, effect a valid dedication of the part of their property being used as a nine-hole golf course, to the owners of the lots in the neighborhood.

The evidence of the dedication is the inscription on the plat of the Cleveland Springs Estates, to wit: "We further dedicate the golf links and playgrounds, and the land occupied by same as indicated on the plat, for such use and pleasure of the owners of the lots, and the owners of other reserves shown on the plat and to the owners of the lots and the reserves

and land in any subsequent Cleveland Springs Estates subdivision which may consist of lands now owned by Cleveland Springs Company or any subsequently acquired lands in Cleveland County, N. C." The Cleveland Realty Company acquired title to the Cleveland Springs Estate and the lands of Cleveland Springs Company, and recorded the plat and sold lots in the Cleveland Springs Estate Development with reference to the plat. The evidence does not support the conclusion that the golf course was dedicated "to the owners of the lots in the neighborhood." The purported dedication is to the owners of lots and lands of the Cleveland Springs Estate development or developments.

Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement. *Steadman v. Pinetops*, 251 N.C. 509, 112 S.E. 2d 102; *Conrad v. Land Company*, 126 N.C. 776, 36 S.E. 282. It is said that such streets, parks and playgrounds are *dedicated* to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. *Jackson v. Gastonia*, 246 N.C. 404, 98 S.E. 2d 444. It is a right in the nature of an easement appurtenant. Whether it be called an easement or a dedication, the right of the lot owners to the use of the streets, parks and playgrounds may not be extinguished, altered or diminished except by agreement or estoppel. *Irwin v. Charlotte*, 193 N.C. 109, 136 S.E. 368; *Todd v. White*, 246 N.C. 59, 97 S.E. 2d 439. This is true because the existence of the right was an inducement to and a part of the consideration for the purchase of the lots. *Hughes v. Clark*, 134 N.C. 457, 47 S.E. 462; *Conrad v. Land Co., supra*. Thus, a street, park or playground may not be reduced in size or put to any use which conflicts with the purpose for which it was dedicated. *Insurance Co. v. Carolina Beach*, 216 N.C. 778, 7 S.E. 2d 13; *Conrad v. Land Co., supra*.

In the *Conrad* case defendant owned a tract of land in the suburbs of Winston, laid it off into lots, with streets and a public square or court, and recorded a map of the layout. Plaintiffs bought lots in the subdivision by deed referring to the map. Defendant thereafter attempted to sell off parts of the square or court and planned to narrow and close a part of the streets around the square. Plaintiffs instituted an action for a permanent injunction. The trial court decreed that defendant be permanently enjoined, and this Court affirmed, saying: "We think . . . those pieces of land which were marked on such a plat as squares, or courts or parks, and the streets and public grounds designated on such a map should forever be open to the purchasers . . ." (Citing authorities). Further:

"It is immaterial whether the public authorities of the city or county had formally accepted the dedication of the court. The plaintiffs have been induced to buy under the map and plat, and the sale was based not merely on the price paid for the lots, but there was the further consideration that the streets and public grounds designated on the map should be forever open to the purchasers and their assigns."

If, as the court below declared and appellees contend, the golf course was irrevocably dedicated, the principles declared in the *Conrad* case apply here. The map of Cleveland Springs Estate shows no roadway between the seventh green and the eighth tee, and no roadways extending across the golf course to property outside the subdivision. To permit a roadway, open to public use, to be constructed, maintained and used over and across land dedicated for the purpose of a golf course would amount to a dedication of the land to a purpose in conflict with that for which it was originally dedicated. If it is permissible in this instance, we see no reason why a roadway, open to the public, could not be maintained between each green and tee and outside each fairway. What was said above with reference to the violation of the restrictions is equally applicable on the question of conflict with the purposes of the dedication.

The court below concluded that Cleveland Realty Company dedicated the golf course "and thereby divested itself of any right, title or interest as would later permit it to impose restrictive covenants with respect to the golf links, or to support the same in equity; . . . that there was an expressed dedication on the plat . . . and such dedication was and is irrevocable, and the said Cleveland Realty Company . . . did not have the right to further restrict or in any way alienate the property occupied by the golf links subsequent to such dedication in 1926."

When considered in the light of our holdings above, these conclusions are immaterial and do not support the judgment or the contentions of appellees. We express no opinion as to whether the conclusions are legally correct or erroneous. Conceivably controversies may arise between lot owners, the Realty Company and the Country Club which may require a determination of some or all of the matters involved in the conclusions set out in the preceding paragraph. But no such determination is required here.

It is stipulated that prior to the recordation of the map in 1926 the Realty Company owned the Cleveland Springs Estate land, including the golf course land, in fee and unrestricted. If there was no valid dedication of the golf course, the Realty Company had the right to convey the land on which the golf course is located to the Country Club and to place the restrictions thereon. As stated above, Hobbs' claim of easement for a road over and across the golf course is repugnant to and violates the restrictions.

If the dedication of the golf course is valid, and if such dedication divested the Realty Company of the right to "in any way *alienate* the property occupied by the golf links," defendants Hobbs acquired nothing by the purported grant of easement from the Country Club. Obviously, if the Realty Company could not alienate the property, the Country Club acquired nothing by virtue of its deed from the Realty Company and had nothing it could convey to Hobbs.

The court's conclusions appear to be ambiguous and conflicting. At one point they seem to indicate that the Realty Company had the right to convey the golf course property to the Country Club, but by reason of the valid and irrevocable dedication could not impose further restrictions. If this is true the Hobbs claim of easement is, as we have already stated, repugnant to and in violation of the purpose of the dedication, and the owners of the lots and lands in the Cleveland Springs Estate Development have the right to restrain the construction and maintenance of the road over and upon the golf course.

The judgment below is

Reversed.